Good morning, your honor. It's Jeffrey Dickerson from Reno, Nevada, appearing on behalf of the appellant, Ms. Conklin, in this case, Officer Conklin. This is a First Amendment case under Section 1983, as well as an Equal Protection case under 1983. The First Amendment claim is, of course, a retaliation claim based upon the springboard of protected activity. The Equal Protection complaint of the sexually inappropriate conduct of Officer Rinaldo back in 1998. The first issue addressed by the District Court on the First Amendment claim, and the only issue addressed by the District Court, was whether or not the speech at issue in this case was of public concern so that it would be protected by the First Amendment. We submit, your honors, that the District Court erred in this regard because it failed to consider the most important part of the under this Court's precedent. The Court focused in each of the instances of its analysis of the speech at issue in this case upon the context and upon the form of the speech, as opposed to focusing upon the content of the speech. If we go back to 1998 and examine what was said back then, we find that the officer went to her prior field training officer, and during that conversation, he was asking how she was doing with Officer Rinaldo in the training program. And he pulled it out of her that she had three basic concerns at that point in time that she related to Morton. One was that he told her that if she did not, if she ever failed to give a face sheet to a citizen complaining, as she just had, that she would be with no training as to what she should do in a robbery homicide investigation, and then getting back into the vehicle and telling her that she had screwed it up, and that if she ever did that again, she would be fired. She also complained that he had asked her if she would get her friend, who's another co-trainee, Wendy, to skinny-dip with him, and if she were able to arrange that, he might see it fit to pass her on her field training. This is what she told Morton, and Morton took that to Lieutenants Ponte and Bunker, who were in charge of the overall management review of the training program, and Lieutenant Bunker and Lieutenant Ponte later inquired of the plaintiff as to more specific information in this regard, and took her away from Rinaldo. She had three more days on her field training with Rinaldo, took her off Rinaldo, and moved her to another field training officer, and Officer Rinaldo testified that he took a black eye for this, that it was sort of a black eye, he testified, and it was his understanding that the reason he got the black eye was for making sexually inappropriate comments to Conklin during the field training exercises. Now the question is, do these statements of Conklin indicate any political, social, or other concern to the community? Would it be something that would inform the decision of a citizen on the operation of government? And there's several different levels to look at that in terms of answering in the affirmative, your honors. I would submit that first of all, this is a training program. This is how officers are trained, and in Robinson v. York, this court noted that the competency of a police force is of great public concern. How do you get competent police? You train them properly. Counsel, what is the significance on that argument of the fact that she's talking about something a decade earlier? It's still protected speech, your honor, and if a jury, a reasonable juror, could conclude that there is a causal connection between that 10-year-old's speech and his activities in more recent times, filing the internal affairs complaint against her, where he knew that that would result in her being silenced for making disparaging remarks about him, in other words, squelching her speech, and also knew that it could result in discipline. Does that answer your question, your honor? I think so, although the retaliation, I thought, was a different claim than just separate the basic First Amendment argument. It is part of the equal protection argument as well, and that goes to the black guy comment, because the inference from his testimony is that he was called on the carpet for the sexually inappropriate remarks. That makes some sense, because the plaintiff testified, and it's her complaint that she filed with Human Resources. She indicates there that when she talked to Lieutenant Bunker, Lieutenant Bunker told her that she could have a lawsuit against the city over this, and the only real basis for a lawsuit against the city, based upon the comments that she made to them at that time, the 1998 incidents, would be of a sexual nature, a sexual harassment type of case. Again, we do have an issue in this case of, your honor calls into question, the distance in time between the protected activity in 1998 and the adverse actions that occurred in 2007 and 2008. We span that arc of time with the ongoing comments in the locker room, with the C word and the Dyke reference, referring specifically to her gender, and I don't want to repeat that first word in this courtroom, your honor. That's all right. I understand. I saw a lot of bad words in the briefing, but I don't know that you can avoid them in trying to make your client's case, so that's up to you. Anyway, thank you. You've answered my question. So that's the 1998 protected speech. Would that be of concern to a citizen? Would a citizen trying to evaluate the operation of the agency want to know that? Again, as I said before, this is, after all, a training program. Competency is a big issue of public concern, according to this court's precedent, but going down further beyond the overall training program itself, this is the operation of a unit. These are two officers on the street enforcing the law. One of them, who's charged with enforcing the law, is arguably violating the law, and she's reporting that to superiors, in terms of his sexually harassing comments, and in terms of his other illegal activities, such as hanging out at a friend's house, watching motorcycle videos, as opposed to patrolling the streets, which is his charge. So we're talking about the performance of an officer. Also, in the context of her comments back in 1998, her morale was down, and that was part of the issue, her morale, and this court has stated that morale of a department is an important issue. The camaraderie and so forth of a cohesive law enforcement unit is important, and it's fostered and held together by good morale. For all these reasons, the speech that she engaged in in 1998 was of public concern. We bring that current in 2007, in November, when they're in training, and she's trying to become a field training officer, and that's what she was in training for, and they have a lull in the activities, I guess, and she and several other officers are talking in training war stories about prior supervisors and what had happened. Rinaldo came up from another officer, Officer Reyes. I guess he had a story. The plaintiff can't recall who talked about Rinaldo first, but they were training stories, and she reiterated what she had told management back in 1998. This is a repetition of the same speech, and so the same analysis would apply. It's in a different context, though. It's with coworkers, but it's not on duty. It's a discussion. It's of enough importance to them for her to raise it and talk about it with others, and in this context, we would submit that it's basically a debate on a matter of public concern. She's putting it out there for comment, and in fact, she got a comment. One of the officers, Officer Yon, said Pete would never do that, and that's what led to Yon telling Rinaldo about that conversation and in turn filing his complaint, which again he knew would generate two things for sure. One is a silencing memo that would stop her free speech and would possibly get her to discipline. A disciplinary investigation has been found to be an adverse employment action in various cases before the circuit that we've cited in the briefs. The emotional distress associated with that should be compensable. We may not have a termination here, Your Honors. We may have a person who went on to achieve great things, but she was deterred from going into the robbery homicide program, she testified, because of the threat that if she did not stop trying to get the silencing order removed, she would not qualify for the assignment. So she went back to patrol where she remains today, and this may not be the million-dollar case, Your Honors. I'm not submitting that, but First Amendment is important, the elements are met, the district court heard, and we urge reversal and remand for further consideration under this court's order. Thank you. Thank you, counsel. Excuse me. Good morning. Don Christensen on behalf of Respondent Peter Rinaldo. I'd like to point out to the court first that Peter Rinaldo is the only defendant remaining in this case. This case's appeal has not been pursued with respect to the city of Reno. The district court properly granted summary judgment here in favor of the defendants. They resolved this case on the basis, purely on the basis of questions of law. There was no genuine issue of material fact asserted here in this court with respect to either of those determinations of law that the district court made. The district court first found that there was no basis for a First Amendment retaliation claim because the plaintiff did not engage in any instance of protected speech. And with respect to the equal protection claim, there was no showing that the plaintiff was subjected to an adverse employment action. One thing that counsel for the appellant did say in his opening remarks was the question about Justice Gould, I think, whether retaliation was part of the equal protection claim or not. There's no Title VII claim here asserted. It did not go through that process prior to filing a suit. So any of the retaliation was analyzed only under, totally under a First Amendment claim. I think it is important to note what exactly the plaintiff said in 1998. If we put it in the context, Officer Rinaldo was her third training officer. Her first one was Officer Tipoian, who turned out to be one of her best friends in the department as time went by. That environment was very easygoing for her. In her own words, it was like taking baby steps towards becoming a police officer. Her next one was, her next training officer was Officer Morton, who was a part-time pastor, and that environment was very pleasant for her also. And the third one was Officer Rinaldo. And what the plaintiff testified was that she thought he was very smart and he knew his job well, but the training environment and the personalities just didn't mix well. Rinaldo was argumentative. And if she messed up on a call, then the environment became tense. And she felt constantly criticized for her work. It was a different regime that she had felt with the first two training officers. Her initial complaints that were made to Officer Morton when he asked her how it was going with Officer Rinaldo are found in ER 277 and 278, and these are the five of them, that Rinaldo had yelled at her about messing up an armed robbery call, that Rinaldo had asked about skinny dipping with a female employee, that he had made her use a bathroom at the restaurant that they were located at instead of driving all the way to the station to use the restroom, that she didn't get along well with Rinaldo, and that their personalities didn't work well together. She believed, she testified in her deposition that she believed this conduct showed only he didn't like her and they didn't get along. And she had no reason to believe that any of these actions were taken because of her sex or gender. This is not protected speech, I submit. It doesn't relate to any kind of political, social, other concern to the community. The complaint was how about this training officer was dealing with her. None of those things really deal with a matter of public concern. There's nothing about how the police department could work better, nothing about how Rinaldo treated other employees. The speech just didn't include any information that would allow the public to make some evaluation of how the Reno Police Department in general was functioning. This is not like the Robinson v. York case in our view. In that case, Officer Robinson spoke out, filed reports about misconduct in the department over a four-year period. He testified in a class action lawsuit that alleged discrimination, and he also filed misconduct reports pertaining to various the misconduct posed and the need to respond to those. And that's not the kind of speech that the plaintiff here engaged in in 1998. With respect to the other matter instances of, well, this court just in general, just to review some of these, for speech to be a matter of public concern, it has to be a matter of value and concern to the public at the time of publication. If any of the three, or two of the 1998 and 2007 instances of speech relate to that, the only one that would satisfy that would be 1998. And as we've said, that did not address a matter of public concern. This court has consistently stated that speech should be deemed unprotected where the employee is simply complaining about her own job treatment rather than the job treatment of others. And as the court recently said in this Rocher's case, the mere fact that speech has some reference to government functioning does not make it protected speech. The point of the speech, again, if we look at that in any of these instances, in 1998 it was concerned solely with her own treatment. She spoke out only because another training officer, a prior training officer came to her and asked her how things were going. And the point of the speech was to convey her individual complaint about how she was 1998, nine years earlier. The point of it, she was on duty at the time. She was in a training exercise. In her own words, she was training war stories with other officers there. And the point of it was simply to entertain each other while the time was passing. We would suggest even if the court finds for some reason that any of this speech was protected, the judgment could still be upheld because none of the actions that the plaintiff complains were taken would reasonably deter a plaintiff from engaging in protected speech. And there's eight things that they've pointed to of the actions that the plaintiff objects to. One is that she heard from others that this officer occasionally referred by vulgar names to her out of her presence. She shrugged those off. Those didn't have any effect on her. One time she was reported to her that on one occasion that Ronaldo sat up with his feet on her desk. He denies that, but she never saw that activity. He objected to that as hearsay. He did request an internal affairs investigation because he had a specific concern that she was repeated, repeating untrue comments. He asked for that investigation. She admitted making that the statements were made. Did you have any cases on whether being subjected to an internal affairs investigation constitutes an adverse employment action? There's case cited, but I think that the standard has to be an unwarranted sort of investigation. Here she admitted making these remarks, and the only reason nothing occurred to the plaintiff as a result of this investigation. No discipline was taken. The question is whether the investigation in itself constitutes an adverse employment action. I don't believe so. If it's not an unwarranted request for an investigation in and of itself, it has no impact. Is that a tribal issue material fact whether it is warranted or unwarranted? Would that not be a tribal issue material fact whether it was warranted or unwarranted? Guess what you mean by the question what the warrant or unwarranted means, but somehow you got to have some. Well, you said warranted or unwarranted was the key. That's how I understood it. Well, it really doesn't matter how you understood it. What are the cases? Is there any law on the question of whether an internal affairs investigation is an adverse employment action? You said depends on whether it's warranted or unwarranted. I don't know where that came from. Well, in the, I believe it's a, if I have the right case, the Alpha Energy. No, it's not Alpha Energy. It's the one where the, I believe it was a physician involved, where there was an later to be by a reviewing board that there was no basis for it, but the employer had taken action even anyway against that employee. You mean action as a result of the investigation? Yes, that's my recollection of it. So is it the action that's an adverse employment action, the action that they took as a result of the investigation, or is it the investigation itself? Under the Ninth Circuit standard, it has to be action that would reasonably deter a plaintiff from engaging in protected speech. I believe that's what the standard is. Yes. And you don't know whether there's any case law on the question of whether being subjected to an internal affairs investigation is an action which would deter an employee from engaging in the conduct. I submit that if there's a reasonable basis for requesting an investigation, then in and of itself, it cannot be deemed action that would be sufficient to deter someone from engaging in protective speech. Here, the plaintiff admitted making these statements, and the investigation resolved basically as unsubstantiated only because the investigator concluded that if those statements were really made, that conduct really occurred, then she was substantiated. She was okay, authorized, allowed to make those kinds of statements while on duty. And they couldn't determine whether it actually occurred or not because it went back 10 years. And that's how the investigation was resolved. But I would submit in and of itself, just requesting an investigation does not do anything. Very quickly, none of the other eight actions materially affected the plaintiff's employment. There's no basis for a hostile work environment here. There was virtually no contact between these parties after the 1998 for almost nine years. After that, I see that my. Yes. Thank you. You have seven seconds. You can have a sentence or two. Ulrich versus City of San Francisco and Poland versus Chertoff are the two cases that we've cited in our brief that I believe stand for the proposition that an investigation that could lead to discipline can be an adverse employment action. Can be or is. Can be. Each of these is. Depending on what? Depending on what? The circumstances of the case. In this but it was unsubstantiated. How can you say it was warranted if it's at the same time unsubstantiated? Well, you know, there may be a different standard for whether you can investigate than whether you can punish. It would be nice to seem to me an investigation is a duty of the department. Maybe it's not the duty of the one who brings the charges. That's a different. He caused the charges. He caused. And under Johnson versus Duffy and the facts of this case, the inferences is that he did that in order to stop her from talking about the things that she was talking about, which we contend is a public concern with other officers and with management. And he knew from prior IA's that that directive would issue. He also knew that the directive that she not talk to him, not talk to anybody about him. So it had a prior restraint effect on her going into the future, not to make any, quote, disparaging comments about her, which we contend is a vague and overly broad directive. In the first place, the district court found that that speech would not have been a public concern, but that's speculative on the district court's part. She never got the words out. Thank you. Thank you. Case just argued will be submitted. Next case is Van Pena versus Meeker.
judges: Timlin, Reinhardt, Gould